Name and Prisoner/Booking Number: KEVIN D. WOODS, # 222086

Place of Confinement: A.S.P.C.-EYMAN / COOK UNIT

Mailing Address: P.O. BOX 3200

City, State, Zip Code: FLORENCE, ARIZONA 85132-3200

☒ FILED  ☐ LODGED

**Nov 13 2018**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

(Full Name of Plaintiff) KEVIN D. WOODS # 222086,

Plaintiff,

v.

(Full Name of Defendant)
(1) CORIZON HEALTH, et. al.,
(2) LINDA OKAFOR, (STAFF, NURSE PRACTITIONER),
(3) C. HAWLEY, (DIRECTOR OF NURSING; DON),
(4) C. DEMERY (Facilities HEALTH Administrator)

Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-18-03321-PHX-SRB (JZB)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

( JURY TRIAL DEMANDED )

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☐ Other: _____

2. Institution/city where violation occurred: A.S.P.C.-EYMAN / COOK UNIT; FLORENCE, AZ. 85132

## B. DEFENDANTS

1. Name of first Defendant: **CORIZON HEALTH, et al.**  . The first Defendant is employed as: **HEALTH CARE PROVIDER / HEALTH SERVICES** at **ARIZONA DEPARTMENT OF CORRECTIONS / COOK UNIT** .
   (Position and Title)                                          (Institution)

2. Name of second Defendant: **LINDA OKAFOR**  . The second Defendant is employed as: **NURSE PRACTITIONER / CORIZON HEALTH MEDICAL PROVIDER** at **ARIZONA DEPARTMENT OF CORRECTIONS - EYMAN / COOK UNIT** .
   (Position and Title)                                          (Institution)

3. Name of third Defendant: **C. HAWLEY, LPN**  . The third Defendant is employed as: **OFFICE OF THE DON / INMATE HEALTH SERVICES** at **ARIZONA DEPARTMENT OF CORRECTIONS / EYMAN COMPLEX** .
   (Position and Title)                                          (Institution)

4. Name of fourth Defendant: **C. Demery**  . The fourth Defendant is employed as: **Facilities Health Administrator** at **ASPC-EYMAN / CORIZON** .
   (Position and Title)                                          (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?   ☐ Yes   ☒ No

2. If yes, how many lawsuits have you filed? _____ . Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: **N/A** v. **N/A**
      2. Court and case number: **N/A**
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) **N/A**
         **N/A**

   b. Second prior lawsuit:
      1. Parties: **N/A** v. **N/A**
      2. Court and case number: **N/A**
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) **N/A**
         **N/A**

   c. Third prior lawsuit:
      1. Parties: **N/A** v. **N/A**
      2. Court and case number: **N/A**
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) **N/A**
         **N/A**

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

D. CAUSE OF ACTION

## COUNT I

1. State the constitutional or other federal civil right that was violated: _EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION._

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what each **Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   _FOR THIS COMPLAINT AGAINST DEFENDANTS, PLAINTIFF WOODS ALLEGE AS FOLLOWS:_
   _1. PLAINTIFF WOODS BRING THIS ACTION FOR VIOLATIONS OF THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION; 42 U.S.C. § 1983; AND ARIZONA COMMON AND STATUTORY LAWS, INCLUDING BUT NOT LIMITED TO ARIZONA REVISED STATUE ("A.R.S.") A.R.S. § 31-201.01 et. seq., A.R.S. § 41 et. seq., A.R.S. § 41-1604, AND A.R.S. § 12-2603 et. seq., AGAINST DEFENDANTS CORIZON HEALTH, et al., NP LINDA OKAFOR; DON C. HAWLEY AND FHA C. DEMERY._
   _2. BECAUSE THE MAJORITY OF THE PARTIES MAY BE RESIDENTS OF MARICOPA COUNTY, ARIZONA, AND THE EVENTS UNDERLYING THIS LAWSUIT OCCURRED IN PINAL COUNTY, JURISDICTION AND VENUE IS PROPER IN THIS COURT._
   _3. DEFENDANTS OWE PLAINTIFF WOODS TORT AND CONSTITUTIONAL DUTIES OF CARE TO PROVIDE HIM WITH REASONABLE, APPROPRIATE AND NON-NEGLIGENT MEDICAL CARE._
   _4. DEFENDANTS BREACHED THEIR DUTIES OF CARE AND DEMONSTRATED DELIBERATE INDIFFERENCE TO PLAINTIFF WOODS' CIVIL RIGHTS BY NOT ONLY IGNORING HIS SERIOUS MEDICAL NEEDS BUT ESTABLISHING POLICIES, CUSTOMS, PROCEDURES AND PRACTICES WHICH AFFIRMATIVELY LED TO SERIOUS RISKS AND POTENTIAL PERMANENT INJURIES TO PLAINTIFF WOODS._
   _5. PLAINTIFF WOODS INCORPORATE THE ALLEGATIONS IN THE FOREGOING PARAGRAPHS AS THOUGH FULLY SET FORTH HEREIN._
   _6. AT ALL RELEVANT TIMES, PLAINTIFF KEVIN D. WOODS ("WOODS") WAS INCARCERATED AND IN THE CARE, CUSTODY,_

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   _DUE TO A RIGHT ARM INJURY, AS A DIRECT AND PROXIMATE RESULT OF NAMED OR SAID DEFENDANTS CORIZON HEALTH, et al., OKAFOR, HAWLEY, DEMERY DELIBERATE INDIFFERENCE, WOODS SUFFERED EXTRAORDINARY PAIN AND SUFFERING, PERMANENT INJURY REQUIRING CORRECTIVE SURGERY, FUTURE MEDICAL EXPENSES, AND HIS MARITAL COMMUNITY HAVE SUFFERED A SIGNIFICANT LOSS OF HIS POTENTIAL INCOME AND/OR EARNING CAPACITY TO CONTINUE ON IN THE FUTURISTIC MEDICAL NEEDS_

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count III? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count III to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _N/A_

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

3.

## D. CAUSE OF ACTION
## COUNT I

3. SUPPORTING FACTS (con't).

AND CONTROL OF THE ARIZONA DEPARTMENT OF CORRECTIONS ("ADC") AT THE EYMAN COOK UNIT.

7. AT ALL RELEVANT TIMES, DENISE G. WOODS WAS THE WIFE OF PLAINTIFF KEVIN D. WOODS ("WOODS") AND IS A RESIDENT OF THE STATE OF ARIZONA, COUNTY OF MARICOPA.

8. DEFENDANT CORIZON HEALTH, INC. IS A PRIVATELY OWNED TENNESSEE CORPORATION THAT WAS AUTHORIZED TO, AND DID, CONDUCT BUSINESS IN ARIZONA, INCLUDING PINAL COUNTY.

9. DEFENDANT CORIZON INC. IS A PRIVATELY OWNED TENNESSEE CORPORATION THAT WAS AUTHORIZE TO, AND DID, CONDUCT BUSINESS IN ARIZONA, INCLUDING PINAL COUNTY.

10. DEFENDANT CORIZON, LLC IS A TENNESSEE LIMITED LIABILITY COMPANY THAT WAS AUTHORIZED TO, AND DID, CONDUCT BUSINESS IN ARIZONA, INCLUDING IN PINAL COUNTY. CORIZON, LLC IS A WHOLLY OWNED SUBSIDIARY OF CORIZON HEALTH, INC.

11. DEFENDANT CORIZON HEALTH OF NEW JERSEY, LLC IS A NEW JERSEY LIMITED LIABILITY COMPANY THAT WAS AUTHORIZED TO, AND DID, CONDUCT BUSINESS IN ARIZONA, INCLUDING IN PINAL COUNTY.

12. COLLECTIVELY, THE DEFENDANTS NAMED IN PARAGRAPHS 8 THROUGH 11 ABOVE ARE HEREIN REFERRED HEREIN TO AS "CORIZON HEALTH, et al."

13. NAMED PERSON KRONEIC, CO II, WAS, AT ALL RELEVANT TIMES, EMPLOYED BY ADC AS A CORRECTIONS OFFICER.

14. NAMED PERSON CAPTAIN ROMNEY, WAS, AT ALL RELEVANT TIMES, EMPLOYED BY ADC AS A CORRECTIONS OFFICER.

15. NAMED PERSON CO III ANDERSON, WAS, AT ALL RELEVANT TIMES, EMPLOYED BY ADC AS AN ADMINISTRATIVE CORRECTIONS OFFICER.

16. NAMED PERSON JOHN DOE I, IS LICENSED BY THE STATE OF ARIZONA AS A X-RAY TECHNICIAN, AND WAS, AT ALL RELEVANT TIMES, BELIEVED TO BE AN AGENT OR EMPLOYEE OF CORIZON HEALTH, et al., AND ASSIGNED TO PROVIDE MEDICAL SERVICES AT VARIOUS FACILITIES OPERATED BY THE ADC, INCLUDING THE MEADOWS UNIT.

17. NAMED PERSON GATANSKY IS LICENSED BY THE STATE OF ARIZONA AS AN X-RAY TECHNICIAN, AND WAS, AT ALL RELEVANT TIMES, BELIEVED TO BE AN AGENT OR EMPLOYEE OF CORIZON HEALTH, et al., AND ASSIGNED TO PROVIDE MEDICAL SERVICES

at various facilities operated by ADC, including the Browning Unit.

18. Defendant Linda Okafor is licensed by the State of Arizona as a Nurse Practitioner, and was, at all relevant times, believed to be an agent or employee of Corizon Health, et al., and assigned to provide medical services at various facilities operated by ADC, including the Eyman Cook Unit.

19. Defendant C. Hawley, LPN, is licensed by the State of Arizona as a Licensed Practicing Nurse, and was, at all relevant times, believed to be an agent or employee of Corizon Health, et al., and assigned to provide medical services at various facilities operated by the ADC, including Eyman Cook Unit.

20. Defendant C. Demery, Facilities Health Administrator, is licensed by the State of Arizona as a Supervisory Administrator for Health Services or otherwise, and was, at all relevant times, believed to be an agent or employee of Corizon Health, et al., or the State of Arizona for the ADC, and assigned to provide medical services at various facilities operated by the ADC, including the Eyman Cook Unit.

21. As Facilities Health Administrator, Defendant C. Demery was, at all material times hereto, the Director of Health Services, and he is sued in his official capacity herein. As the Director of Health Services for the ADC/Corizon Health, et al., Defendant C. Demery is responsible for establishing, monitoring, or enforcing overall operations, policies, and practices to provide medical services at at various facilities operated by the ADC or practices of the Arizona State Prison System/Corizon Health, et al., which includes the provision of constitutionally adequate medical care for all prisoners committed to the custody of ADC.

22. As Facilities Health Administrator, Defendant C. Demery is responsible for decisions concerning staff hiring, supervision, deployment or training that directly affect prisoners' abilities to obtain adequate and necessary health services. He is responsible for providing constitutional conditions of medical health care in all units for the ADC-Eyman Complex/Corizon Health, et al.

23. AT ALL MATERIAL TIMES, DEFENDANTS OKAFOR, HAWSLEY AND DEMERY WERE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT AND THEREFORE CORIZON HEALTH, et al., DEFENDANTS ARE VICARIOUSLY LIABLE UNDER THE PRINCIPLE OF RESPONDEAT SUPERIOR FOR THE ACTS AND OMISSIONS OF ITS EMPLOYEES INCLUDING OKAFOR, HAWSLEY AND DEMERY.

24. CORIZON HEALTH, et al., IS VICARIOUSLY LIABLE UNDER THE PRINCIPLE OF RESPONDEAT SUPERIOR, PRINCIPLE/AGENCY AND/OR NON-DELEGABLE DUTY FOR THE ACTIONS AND INACTIONS OF ITS EMPLOYEES, INCLUDING THOSE EMPLOYEES NAMED AS DEFENDANTS IN THIS ACTION, AS TO ANY CLAIMS THAT ARE ASSERTED BY PLAINTIFF, WOODS.

25. FOR PURPOSES OF PLAINTIFF WOODS' CLAIMS THAT ARISE UNDER FEDERAL LAWS, INCLUDING WITHOUT LIMITATION THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983 et. seq., AND AS MAY BE RELEVANT TO PLAINTIFF'S STATE LAWS CLAIMS, AT ALL RELEVANT TIMES DESCRIBED HEREIN, ALL DEFENDANTS WERE ACTING UNDER THE COLOR OF STATE LAWS.

## FACTUAL ALLEGATIONS
### (WOODS ACCIDENT AND INJURIES)

26. ON AUGUST 1, 2018, PLAINTIFF WAS PLAYING BASKETBALL WHEN HE WAS "UNDERCUT WHILE AIRBORNE BY AN OPPOSING PLAYER."

27. PLAINTIFF FELL TO THE CEMENT FLOOR AND "CRASHED DOWN OFF-BALANCE ONTO THE RIGHT ARM'S ELBOW AND FOREARM AREA," "WHICH HAD THE IMPACT OF ALL OF PLAINTIFF'S BODY WEIGHT."

28. SHORTLY AFTER RECEIVING THE "PAINFUL AND TRAUMATIC INJURY," PLAINTIFF WENT TO THE COOK UNIT'S MEDICAL FACILITY FOR AN EXAMINATION AND EMERGENCY TREATMENT.

29. THE ONSITE "MEDICAL ASSISTANT/PERSON[NEL]" DID NOT X-RAY PLAINTIFF'S ARM OR HAVE PLAINTIFF TRANSPORTED TO THE HOSPITAL FOR "URGENT OR EMERGENCY TREATMENT, X-RAYS, OR AN EXTENSIVE EXAMINATION."

30. PLAINTIFF RECEIVED ONLY ICE AND TYLENOL FOR THE PAIN OF THE INJURY AND ADVISED TO SUBMIT A HEALTH NEEDS REQUEST (HNR) TO BE SEEN BY A NURSE AND EXAMINED BY THE MEDICAL NURSE PRACTITIONER BECAUSE

NO LICENSED PHYSICIAN IS EMPLOYED OR ASSIGNED TO THE COOK UNIT'S MEDICAL FACILITY, BY THE ARIZONA DEPARTMENT OF CORRECTIONS (ADC) OR CORIZON HEALTH, et al.

31. ON AUGUST 2, 2018, PLAINTIFF SUBMITTED AN HNR, REQUESTING EMERGENCY TREATMENT.

32. THE NEXT DAY, PLAINTIFF WAS EXAMINED BY A NURSE (JANE DOE, I) ON THE NURSE'S LINE OF SCHEDULED PATIENTS. PLAINTIFF WAS NOT TAKEN OR REQUESTED TO BE TRANSPORTED TO THE MEDICAL PROVIDER OR HOSPITAL TO GET X-RAYS OR MEDICAL TREATMENT FOR THE INJURED ARM.

33. FROM AUGUST 1 to AUGUST 3, 2018, PLAINTIFF WAS ONLY PROVIDED A 7-DAY LOWER BUNK SPECIAL NEEDS ASSIGNMENT, MEDICAL ICE FOR SWELLING, AND AN ACE BANDAGE, AND SCHEDULED TO SEE DEFENDANT OKAFOR ON DOCTOR'S LINE SCHEDULING OF PATIENTS ON AUGUST 8, 2018.

34. ON AUGUST 8, 2018, PLAINTIFF WENT TO THE COOK UNIT'S MEDICAL FACILITY TO SEE DEFENDANT OKAFOR TO HAVE X-RAYS TAKEN OF THE INJURED ARM AND FOR EMERGENCY MEDICAL TREATMENT AS PREVIOUSLY SCHEDULED.

35. CO II KRONEIC, ADC CORRECTIONS OFFICER ASSIGNED TO THE COOK UNIT MEDICAL FACILITY ON AUGUST 8, 2018, ADVISED PLAINTIFF THAT DEFENDANT OKAFOR HAD POSTPONED/CANCELLED THE SCHEDULED VISIT, BUT PROVIDED NO REASON FOR THE POSTPONEMENT/CANCELLATION GIVEN BY DEFENDANT OKAFOR. HOWEVER, CO II KRONEIC ADVISED PLAINTIFF THAT DEFENDANT OKAFOR HAD RESCHEDULED THE VISIT OR APPOINTMENT FOR AUGUST 14, 2018.

36. ON AUGUST 14, 2018, PLAINTIFF AGAIN WENT TO THE COOK UNIT MEDICAL FACILITY AS PREVIOUSLY RESCHEDULED FROM AUGUST 8, 2018. CO II KRONEIC, AGAIN, INFORMED PLAINTIFF THAT THE VISIT WAS POSTPONED/CANCELLED BY DEFENDANT OKAFOR, AND WITHOUT REASON, NO EMERGENCY ATTENTION AND TREATMENT WOULD BE RENDERED OR PROVIDED, AND PLAINTIFF'S VISIT WAS RESCHEDULED BY DEFENDANT OKAFOR FOR AUGUST 20, 2018.

37. PLAINTIFF PLEADED TO BE SEEN BY DEFENDANT OKAFOR FOR HIS RIGHT ARM INJURY, WHICH WAS SWOLLEN AND VISIBLY INJURED, TO BE TAKEN TO A HOSPITAL OR TO SPEAK TO DEFENDANT OKAFOR. HOWEVER, DEFENDANT OKAFOR REFUSED WITHOUT EXPLANATION OR REASON PROVIDED AS TO WHY PLAINTIFF WOULD NOT BE SEEN THAT DATE.

38. PLAINTIFF REMAINED IN IMMENSE PAIN WHILE HE WAITED MANY HOURS AND DAYS TO VISIT DEFENDANT OKAFOR FOR X-RAYS AND URGENT OR EMERGENCY MEDICAL TREATMENT.

39. PLAINTIFF WAS FORCED TO RETURN TO HIS HOUSING UNIT WITHOUT AN X-RAY OR MEDICAL TREATMENT AND

adequate pain medication, and to climb up onto a five-feet high top level bunk bed sleeping area with extreme risks and difficulties as the 7-day special needs order had expired for a "bottom bunk" sleeping area that did require the use of his injured and broken arm to get into to rest the arm and sleep.

40. With each passing moment Plaintiff continued to experience incredible pain as he is "right handed."

41. As such Plaintiff received absolutely no medical care whatsoever of an adequate nature despite his obvious and desperate need(s).

42. As a result of Defendant Okafor's deliberate and callous indifference to Plaintiff's urgent medical and/or health condition, the utter lack of medical care cause Plaintiff (Woods) to suffer immeasurable pain throughout the days and nights. Each time that Woods tried to sleep, he was abruptly awakened by intense shooting pain when he rolled-over or whenever his forearm touched anything.

43. Without adequate dosages of pain medication or an appropriate dressing for Woods' forearm and elbow area, Woods was forced to endure incredible pain throughout each day and night especially.

44. Woods remained in immense pain while he waited over twenty-(20)-days for Defendant Okafor to examine or schedule an examination, X-rays or Cook Unit medical visit.

45. After a sleepless night, Woods sought out medical attention the following morning. Woods personally went to the Captain's area where he informed Captain Romney of Defendant Okafor's deliberate and callous indifference to the urgent medical condition, the utter lack of medical care that caused Woods to suffer immeasurable pain as his forearm swelled and bruised.

46. On August 21, 2018, shortly after speaking with Captain Romney about Defendant Okafor's postponement/cancellation of the August 20, 2018 scheduled visit and all the previous incidents of refusing emergency or urgent medical treatment through postponements of schedule visits Woods pleaded with Captain Romney to be taken directly to a hospital for evaluation and treatment. Instead, Captain Romney made Woods wait in or near the Captain's receiving area of the North Yard and went to the office and phoned the Cook Unit's medical facility about Woods' right arm which was swollen and visibly injured.

47. Once Captain Romney returned, he inspected Woods swollen and bruised forearm area and saw that Woods was in immense pain, but rather than call an ambulance, he ordered Woods into and through the gated Captain's office and side lot waiting area and escorted Woods straight to the Cook Unit Medical Facility and inside through the side door so that Woods could be seen by medical staff.

48. On August 21, 2018, Woods went to medical escorted by Captain Romney. Woods' vitals and weight was taken by Nurse Jane Doe II, and then seen by Defendant Okafor. Woods was given pain medications and told he would be scheduled to have x-rays performed at the Meadows Unit's Medical Facility. There was no licensed physician on the premises nor x-ray equiptment. Woods' 7-day lower-bunk special needs order was not renewed and no splint or soft cast was placed on his arm nor was the arm immobilized for safety or to prevent further harm and damage to the bone(s), ligaments or tendons in the forearm and elbow area.

49. On August 23, 2018, two days after the visit with Defendant Okafor, Woods was transported to the Medows Unit Medical Facility to visit with the x-ray technician, John Doe, and x-rays were taken. And x-rays showed a "severe fracture of Woods' right arm."

50. On August 27, 2018, Woods again was seen by Defendant Okafor and Woods was advised that Defendant Okafor would request that he be sent out for treatment, and such request had been then already submitted, but it would be within 30 days before he could receive treatment. Defendant Okafor did not submit a request to a hospital or ADC or an ambulance to have Woods sent out or immediately transported for appropriate treatment of his fractured arm, nor did she at the least set the arm in a "soft cast and arm sling" or "set the arm in a splint and arm sling," which would have kept the "fracture bone" immobile which would have aided in the "healing process."

51. On August 29, 2018, twenty-eight days after the injury occurred to Woods' right arm area, he drafted an Informal Complaint Resolution. It was addressed to COIII Anderson, advised of all events which had previously transpired, and stated: "On August 27, 2018, the provider informed me that my right arm is broken badly, and she scheduled an appointment with a doctor/specialist to be examined

and treated. However, she advised me that it (sic) would be atleast 30-days before I could be seen and treated by that doctor. However, due to the amount of elapsed time since my injury initially occurred and the pain and suffering I am currently enduring I need immediate medical attention. Because there is a possibility this arm injury could heal or mend itself in an improper manner resulting in a handicap or loss in range of motion and extended use limitations, I am requesting that my injured arm be designated an emergency treatment case, and that I immediately be transported to the nearest authorized private or state operated hospital and/or specialist for an examination, thorough evaluation and appropriate medical treatment. Please refer to reviewing practitioner, Linda Okafor, medical reports."

52. On November 5, 2018, X-rays revealed Woods' are having complete bone breaks and a fracture (right forearm). Despite the X-ray tech's expedient intra-communication (stat) of the severity thereof, I was informed that based on evaluation, the results were within acceptable limits. No further action is needed. On November 7, 2018, reviewing practitioner, Siji Thomas, NCP, added additional comments "Will reorder forearm X-rays upon notification date.

53. Even though Defendant Okafor knew that Plaintiff Woods had broken bones and/or should have known Woods had broken bone(s) in his forearm and was experiencing incredible pain and suffering, Okafor made no reasonable or adequate effort to accelerate medical treatment and/or the surgery. Defendant Okafor's failure to respond to Woods medical needs in an adequate or reasonable manner has or may have resulted in permanent or potentially permanent disfigurement, loss of range of motion and require pins or screws to infuse the bone back together. This type of fracture (break) requires surgery, and for this type of severe fracture (break), the healing time takes six months to one-year.

54. Incredibly, despite the fact that Defendants Corizon Health, et al., and its medical providers had taken an X-ray and knew that bones in his forearm are or were broken requiring immediate care and obvious edema, Woods as of November 14, 2018 has not been seen or received

MEDICAL TREATMENT OR SURGERY BY AN ORTHOPEDIST SPECIALIST OR OTHER LICENSED MEDICAL SURGEON OR SPECIALIST, AND DEFENDANTS OKAFOR AND THOMAS HAS NO LONGER PROVIDED WOODS WITH ANY TYPE OF PAIN MEDICATIONS SINCE

## SUBSEQUENT X-RAYS

55. ON OR ABOUT NOVEMBER 7, 2018, WOODS WAS TAKEN TO BROWNING UNIT'S MEDICAL FACILITY TO HAVE X-RAYS TAKEN BY X-RAY TECH GATANSKY.

56. X-RAY TECH GATANSKY EXPLAINED TO WOODS THAT DUE TO THE FACT THAT THE BONE(S) WERE NOT TIMELY SET OR PROPERLY RESET, THE FRACTURED BONE(S) IN HIS FOREARM HAD BROKEN CLEANLY APART AND THE BONE MARROW HAD EFFECTIVELY DIED AND WOULD NEED TO BE SURGICALLY INFUSED BACK TOGETHER, AND WILL REQUIRE PINS OR SCREWS. THE HEALING TIME IS SIX (6) MONTHS TO ONE-YEAR FOR THIS TYPE OF SEVERE FRACTURE.

57. X-RAY (MED. TECH) GATANSKY ALSO EXPLAINED WOODS' BROKEN ARM SHOULD HAVE AT LEAST BEEN PLACED IN A SOFT CAST AND ARM SLING OR GIVEN A SPLINT AND ARM SLING, WHICH WOULD HAVE AT LEAST KEPT THE FRACTURED BONE TOGETHER BY IMMOBILIZATION WHICH WOULD HAVE AIDED IN THE HEALING PROCESS AS SOME CALCIUM WOULD HAVE BEGUN TO FORM IN AND AROUND THE FRACTURED BONE. NO ALTERNATIVE TREATMENT WILL HELP IN THE HEALING PROCESS. SURGERY IS REQUIRED. THIS IS A "VERY SEVERE FRACTURE" WHICH CAUSES EXCRUCIATING PAIN, AND IT IS NOT STANDARD PROTOCOL OR ETHICAL FOR MEDICAL PROFESSIONALS TO STAND BY AND ALLOW THIS TYPE OF INJURY, AND THE PAIN AND SUFFERING.

58. THIS LIFE CHANGING UNFAVORABLE OUTCOME, BUT FOR LACK OF DILIGENCE STANDARD MEDICAL TREATMENT AND THE OVERLY BLATANT REJECTION OF PUNCTUALLY EXPEDIENT PRACTICED CARE, COULD HAVE BEEN PREVENTED, AS STATED ON SEPTEMBER 17, 2018, (EXPRESSLY IMPLIED) IN WOODS' DRAFTED INMATE GRIEVANCE WHICH WAS NOT PROCESSED TIMELY UNTIL OCTOBER 2, 2018 BY THE GRIEVANCE COORDINATOR.

59. ON OCTOBER 18, 2018, C. DEMERY, FACILITIES HEALTH ADMINISTRATOR, ASPC-EYMAN/CORIZON

(3H)

HEALTH, et al., IN RESPONSE TO GRIEVANCE NUMBER: A14-120-018, REGARDING WOODS' GRIEVANCE RESOLVED WOODS' REQUEST TO BE SENT TO A HOSPITAL FOR EVALUATION AND SURGICAL TREATMENT STATED: "UTILIZATION REVIEW ("UR") CONSIDERED THE MEDICAL RECORDS AND X-RAY REPORTS, WHICH SHOWED A 'RADIAL HEAD FRACTURE', AND RECOMMENDED AN ALTERNATIVE TREATMENT PLAN AS MEDICAL NECESSITY FOR AN ORTHO CONSULT WAS NOT DEMONSTRATED. NONDISPLACED (MASON TYPE I) FRACTURES INVOLVING THE RADIAL HEAD AND NECK CAN GENERALLY BE TREATED BY A PRIMARY CARE PHYSICIAN ONCE IT HAS BEEN DETERMINED THAT NO MECHANICAL BLOCK TO ELBOW FLEXION EXISTS AS IN (WOODS) YOUR CASE. A SLING MAY BE USED FOR COMFORT FOR 24 TO 48 HOURS AFTER INITIAL INJURY, AND ICE SHOULD BE APPLIED DURING THE FIRST 24 HOURS. RANGE OF MOTION EXERCISES SHOULD BE STARTED AS EARLY AS POSSIBLE. A FOLLOW UP X-RAY WAS ORDERED, AND YOU WERE ADVISED TO CONTINUE WITH IBUPROFEN FOR PAIN ONCE THE TYLENOL #3 EXPIRED. YOU WERE EDUCATED TO CONTINUE WITH RANGE OF MOTION EXERCISES, AND TO MAKE NEEDS KNOWN VIA HNR. YOU WILL BE NOTIFIED OF THE X-RAY RESULTS. IF YOU HAVE ANY FURTHER CONCERNS OR ISSUES THAT HAVE NOT BEEN ADDRESSED, PLEASE SUBMIT A HNR DIRECTLY TO YOUR UNIT NURSING STAFF FOR SCHEDULING. IN ACCORDANCE WITH CURRENT POLICY, THIS RESPONSE IS FINAL, AND CONSTITUTES EXHAUSTION OF ALL REMEDIES WITHIN THE DEPARTMENT. THIS GRIEVANCE IS RESOLVED."

60. ON SEPTEMBER 10, 2018, IN RESPONSE TO WOODS' INFORMAL COMPLAINT C. HAWLEY, LPN, FROM THE OFFICE OF THE DIRECTOR OF NURSING/INMATE HEALTH SERVICES AT ADC/EYMAN, STATED: "YOU WERE NOT SEEN BY THE PROVIDER AGAIN UNTIL 8/27 AND A REQUEST FOR YOU TO BE SENT OUT FOR TREATMENT WAS SUBMITTED. YOU STATE THAT YOU WERE TOLD IT WOULD BE 30-DAYS UNTIL YOU ARE SENT OUT FOR APPROPRIATE TREATMENT OF YOUR FRACTURED ARM, AND YOU ARE REQUESTING IMMEDIATE TREATMENT, NOT TREATMENT IN 30-DAYS. YOU MET WITH THE MEDICAL PROVIDER ON AUGUST 27 TO DISCUSS THE X-RAY RESULTS (WHICH SHOWED A FRACTURE OF THE RIGHT RADIAL HEAD), AND THE NECESSARY TREATMENT. THE MEDICAL PROVIDER SUBMITTED A REQUEST FOR ORTHO CONSULTATION FOR SURGICAL TREATMENT, AFTER APPROVAL BY "UR", YOU WILL BE SCHEDULED FOR THE OFF-SITE ORTHO CONSULTATION. PLEASE SUBMIT AN HNR FOR MEDICAL NEEDS DIRECTLY TO YOUR UNIT NURSING STAFF FOR SCHEDULING. END OF RESPONSE.

61. Defendants Corizon Health, et al., Okafor, Hawley and Demery were and are well aware of severe system-wide deficiencies that have caused significant danger, harm and even death to prisoners in ADC custody. Yet, prior to these events, failed to take any measure to abate the impermissible and unconstitutional risk of harm their decisions create for Arizona prisoners.

62. In recent years, Defendants have ignored repeated warnings of the inadequacies of the health care system and of the dangerous conditions in their work environments.

63. Defendants Corizon Health, et al., Okafor, Hawley and Demery have received numerous warnings, lawsuits, complaints, letters and hundreds upon hundreds of pages of information disclosing potential issues with inadequate medical treatment, serious medical deficiencies, failure to mitigate or treat potential infections, failure to adequately supervise personnel and numerous other concerns. However, despite this, Defendants have continued to ignore or neglect these very serious issues.

64. Defendants Corizon Health, et al., Okafor, Hawley and Demery have continued to make no significant changes or improvements to their prison healthcare policies or procedures, and continued to provide unreasonable, inadequate, negligent and unconstitutionally poor health care to prisoners in ADC custody in reckless and deliberate indifference to both the risk that this conduct posed to those prisoners and Defendants' constitutional, statutory and common law tort duties to provide reasonable and adequate care.

65. As a result of Defendants' acts, Plaintiff Woods has been severely damaged, including, without limitation, permanent physical impairment, the loss of earning potential, and incredible pain and suffering.

## CLAIMS FOR RELIEF

### (COUNT ONE)

### VIOLATION OF EIGHTH AMENDMENT - 42 U.S.C. §1983

### (DEFENDANTS OKAFOR, HAWLEY AND DEMERY)

(3J)

66. PLAINTIFF RE-ALLEGES AND INCORPORATES BY REFERENCE EACH OF THE PREVIOUS ALLEGATIONS AS IS FULLY SET FORTH HEREIN.

67. THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION FORBIDS ONE WHO ACTS UNDER COLOR OF LAW FROM BEING DELIBERATELY INDIFFERENT TO THE SERIOUS MEDICAL NEEDS OF INDIVIDUALS IN THEIR CUSTODY AND CONTROL.

68. AT ALL RELEVANT TIMES, DEFENDANTS OKAFOR, HAWLEY AND DEMERY WERE ACTING UNDER COLOR OF LAW.

69. AT ALL TIMES, WOODS WAS IN THE CUSTODY AND CONTROL OF DEFENDANTS OKAFOR, HAWLEY AND DEMERY WHOM ARE EMPLOYED BY ADC/CORIZON HEALTH, et al., FOR MEDICAL CARE PURPOSES.

70. DEFENDANTS OKAFOR, HAWLEY AND DEMERY KNEW OR SHOULD HAVE KNOWN THAT WOODS WAS IN DIRE NEED OF SERIOUS MEDICAL ATTENTION.

71. DEFENDANTS OKAFOR, HAWLEY AND DEMERY KNEW OR SHOULD HAVE KNOWN THAT WOODS WAS NOT RECEIVING ADEQUATE MEDICAL ATTENTION.

72. DESPITE WOODS' COMPLAINTS AND REPEATED REQUESTS FOR MEDICAL CARE, DEFENDANTS OKAFOR, HAWLEY AND DEMERY DELIBERATELY WITHHELD MEDICAL CARE FROM WOODS AS HE WAS EXPERIENCING SIGNIFICANT MEDICAL EVENTS AND ENDURING SUBSTANTIAL PAIN.

73. DEFENDANTS' OKAFOR, HAWLEY AND DEMERY'S CONDUCT IN THIS REGARD WAS OBJECTIVELY UNREASONABLE AND WAS UNDERTAKEN WITH WILLFUL, RECKLESS AND MALICIOUS INDIFFERENCE TO THE CONSTITUTIONAL RIGHTS AND LIBERTY INTERESTS OF PLAINTIFF AND, BY FAILING TO RESPOND TO HIS MEDICAL NEEDS, WAS WITH NO REGARD TO THE LIKELIHOOD OF CAUSING EXTREME UNNECESSARY PAIN AND PERMANENT DAMAGE TO WOODS. AS A RESULT, WOODS SUFFERED EXTREME UNNECESSARY PAIN AND PERMANENT FOR NO LEGITIMATE PENOLOGICAL PURPOSE.

74. THE WRONGFUL CONDUCT OF DEFENDANTS OKAFOR, HAWLEY AND DEMERY CONSTITUTE VIOLATIONS OF 42 U.S.C. § 1983 IN THAT, WITH DELIBERATE AND CALLOUS INDIFFERENCE, THEY DEPRIVED WOODS OF HIS EIGHTH AND/OR FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION BY DEPRIVING AND DENYING WOODS DESPERATELY NEEDED AND REQUIRED MEDICAL TREATMENT WHILE HE WAS UNDER THEIR CARE.

(3K)

# COUNT II

1. State the constitutional or other federal civil right that was violated: <u>EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION / DENIAL OR FAILURE TO PROVIDE MEDICAL CARE</u>.

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   1) PURSUANT TO THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION;

   2) DEFENDANTS CORIZON HEALTH, et al., IS RESPONSIBLE FOR PLAINTIFF'S CONTINUED MEDICAL CARE WHILE WOODS IS INCARCERATED;

   3) DEFENDANTS CORIZON HEALTH, et al., PROMULGATED AND ENDORSED WRITTEN AND UNWRITTEN POLICIES, CUSTOMS AND PROCEDURES THAT RESULTED IN A VIOLATION OF PLAINTIFF WOODS' EIGHTH AMENDMENT RIGHT OF THE UNITED STATES CONSTITUTION.

   THIS CLAIM IS MORE FULLY SUPPORTED BY THE ATTACHED HANDWRITTEN DETAILS AND FACTS DESCRIBING DEFENDANTS' ERRORS AND OMISSIONS, AND HOW A CONSTITUTIONAL RIGHT WAS THE RESULT, AS IS SUPPORTED TO COUNT 1 DUE TO LIMITED SPACE;

   PLEASE REFER TO PAGES 3(L) through 3(O) OF NUMERAL AND ALPHABETICALLY SEQUENCED, L - O; HANDWRITTEN PAGES AS ATTACHED AND FOLLOWS COUNT I ON PAGE 3.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   PLAINTIFF/WOODS HAS SUFFERED LOSS OF FULL USE AND ENJOYMENT OF HIS RIGHT ARM (HAND, SHOULDER, etc.), ENDURED SIGNIFICANT PAIN AND SUFFERING AND A REDUCTION IN EARNING POTENTIAL SUCH THAT WOODS' MARITAL COMMUNITY HAS AND WILL FUTURISTICALLY SUFFER A REDUCTION IN EARNING POTENTIAL FOR MEDICAL EXPENSES.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. N/A

75. As a direct and proximate result of Defendants Okafor, Hawley and Demery's deliberate indifference, Woods has suffered extraordinary pain, permanent injury, and Woods and his marital community have suffered a significant loss of his potential income and/or earning capacity as owner and partner of their landscaping ventures and employment upon his near future release from ADC on November 17, 2018.

76. The acts and omissions of Defendants Okafor, Hawley and Demery were of such a nature as to entitle Plaintiff Woods to an award of exemplary, monetary and punitive damages to punish the wrongful conduct alleged herein and "to deter such conduct in the future."

77. Pursuant to 42 U.S.C. §1988 and other applicable law, Plaintiffs are entitled to an award of any incurred attorney, para-legal or legal assistant's fees and costs.

## COUNT TWO

### Violation of Civil Rights - 42 U.S.C. §1983

### (Monell Claim)

### (Defendant Corizon Health, et al.)

78. Plaintiff re-alleges and incorporates by reference each of the previous allegations as if fully set forth herein.

79. Pursuant to the Eighth and/or Fourteenth Amendments' of the United States Constitution, Corizon Health, et al., owes prisoners, including Woods, a duty of competent medical care.

80. Woods severely injured his right forearm while in the care, custody and control of the ADC Eyman/Cook Unit.

81. As such, all of Woods' medical care and attention, except for any surgical visits, was provided by Corizon Health, et al. Corizon Health, et al., is responsible for Woods' continued medical care while he remains incarcerated.

82. Defendants Corizon Health, et al. promulgated and endorsed written and unwritten policies

(36)

customs and procedures that resulted in a violation of Woods' Eighth Amendment right of the United States Constitution.

83. Defendants Corizon Health, et al. have a policy and practice of providing prisoners with inadequate medical care in order to "minimize" their expenses and "maximize" their profits and are deliberately indifferent to the fact that their systematic failure to provide adequate medical care to prisoners results in significant injury and a substantial risk of serious harm to them.

84. Defendants Corizon Health, et al. policy and practice of failing to provide adequate medical care directly in Arizona's prisons results in prisoners experiencing prolonged unnecessary pain and suffering, preventable injury, illnesses and death.

85. The Corizon Health, et al. defendants' policy and practice of failing to provide adequate medical care directly and proximately caused Woods' pain, suffering, and permanent injuries and reduced earning potential.

86. Defendants Corizon Health, et al. policy and practice of understaffing their prison healthcare facilities with insufficient medical staff and healthcare providers causes inappropriate, unreasonable, unsafe and unconstitutional delays in diagnosing and treating prisoners in Eyman Cook Unit, and elsewhere.

87. In turn, these delays significantly increase the risk of pain, suffering, death, disfigurement and permanent injuries.

88. By their policies and practices described herein (i.e. utilization review, etc.) Corizon Health, et al., subjects prisoners like Woods to pain, suffering, infection, deterioration and substantial risk of serious harm or permanent injury from inadequate medical care.

89. These policies and practices have been and continue to be implemented by Corizon Health, et al. and their agents, officials, employees, and all persons acting in concert with them under color of state laws, in their official capacities, and are the proximate cause of the deprivation of Woods' rights secured by the United States Constitution under the Eighth or Fourteenth Amendment.

90. In violating Woods' constitutional right to competent, timely medical care while in custody as described above, Corizon Health, et al., was deliberately indifferent to Woods' serious medical condition and needs for timely or otherwise preventive treatment.

91. Corizon Health's, et al., deliberate indifference disregarded clearly established law articulating Woods' right to timely and competent medical care while in custody.

92. No reasonable prison healthcare provider in Corizon Health's, et al., position could have believed or concluded that Woods was not entitled to timely, competent medical care under the Eighth Amendment.

93. Timely, competent medical care while in custody at Eyman/Cook unit and under the care of Corizon Health, et al., would have prevented Woods' serious and permanent injuries.

94. Woods' injuries were a "foreseeable" consequence of deliberate indifference by Corizon Health, et al., and their violation of Woods' constitutional rights, and damaged Woods' marital community as described herein.

95. Corizon Health, et al., is not entitled to absolute or qualified immunity from Plaintiff Woods' § 1983 and Constitutional claims.

96. As a result of Defendants', Corizon Health, et al., breaches of their various duties, Woods has suffered loss of full use and enjoyment of his right hand, arm and shoulder, endured significant pain and suffering and a reduction in earning potential for at least the time of rehabilitation after the corrective surgery and healing, such that Woods' marital community has and will suffer a reduction in earning potential, future medical expenses and medical treatment upon the nearing release.

97. The acts and omissions of Defendants were of such a nature as to entitle Plaintiffs to an award of exemplary, punitive and monetary damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## Jury Trial Demanded

Plaintiff(s) hereby demand a jury trial in this matter as to all claims and against all Defendants.

(3N)

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF SEEKS A JUDGMENT IN ITS FAVOR AND AGAINST DEFENDANTS:

A. FOR COMPENSATORY, GENERAL AND SPECIAL DAMAGES AGAINST EACH AND EVERY DEFENDANT, JOINTLY AND SEVERALLY IN AN AMOUNT TO BE PROVEN AT TRIAL;

B. IN AND FOR PUNITIVE DAMAGES AND EXEMPLARY DAMAGES, AGAINST DEFENDANTS IN AN AMOUNT APPROPRIATE TO PUNISH THE WRONGFUL CONDUCT ALLEGED HEREIN AND TO DETER SUCH CONDUCT IN THE FUTURE;

C. FOR PRE- AND POST-JUDGMENT INTEREST TO THE EXTENT PROVIDED BY LAW;

D. FOR PLAINTIFF'S INCURRED COSTS, INCLUDING ALL INCURRED ATTORNEY'S AND LEGAL FEES, AND COURT COSTS, PURSUANT TO 42 U.S.C. § 1988, 42 U.S.C. § 1997 AND AS OTHERWISE AUTHORIZED BY ANY OTHER STATUE OR LAW; AND

E. FOR ANY OTHER RELIEF DEEMED JUST AND NECESSARY.

RESPECTFULLY SUBMITTED this 13th day of NOVEMBER, 2018.

ASSISTED BY _____ #150854        SUBMITTED BY _____
TILFERT D. VAUGHN / # 150854                KEVIN D. WOODS, # 222086
LEGAL ASSISTANT, INMATE                      PRO SE PLAINTIFF, INMATE

(30)

## E. REQUEST FOR RELIEF

State the relief you are seeking:

MONETARY DAMAGES: $50,000
PUNITIVE DAMAGES: $50,000
PAIN AND SUFFERING: $75,000
FUTURE MEDICAL EXPENSES: $150,000
MENTAL AND EMOTIONAL HARM: $50,000
FUTURE LOSS OF WAGES: $100,000
DISFIGUREMENT OR LOSS OF LIMB: $150,000

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  11-8-18
              DATE

_Kevin D. Wade_ (signature)
SIGNATURE OF PLAINTIFF

TILFERT D. VAUGHN, INMATE #150854 (LEGAL ASSISTANT)
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.