JL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Kevin D. Woods,

Plaintiff,

v.

Corizon Health, et al.,

Defendants.

No. CV 18-03321-PHX-SRB (JZB)

**ORDER**

On October 16, 2018, Plaintiff Kevin D. Woods, who was then confined in the Arizona State Prison Complex-Eyman, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed In Forma Pauperis. In an October 19, 2018 Order, the Court denied the deficient Application to Proceed and gave Plaintiff 30 days either to pay the filing and administrative fees for this action or file a complete Application to Proceed. On October 26, 2018, Plaintiff filed a new Application to Proceed In Forma Pauperis. In an October 30, 2018 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On November 13, 2018, Plaintiff filed his First Amended Complaint (Doc. 11). Plaintiff also filed a Notice of Change of Address, indicating that he was no longer in custody. In a November 20, 2018 Order, the Court gave Plaintiff 30 days either to pay the

TERMPSREF

balance of the filing fees or file a non-prisoner Application to Proceed In District Court Without Prepaying Fees or Costs.  On December 6, 2018, Plaintiff filed a non-prisoner Application to Proceed (Doc. 15).  The Court will order Defendant Okafor to answer Count One and Defendant Corizon to answer Count Two of the First Amended Complaint and will dismiss the remaining Defendants without prejudice.

**I.     Application to Proceed In District Court Without Prepaying Fees or Costs**

Plaintiff's non-prisoner Application to Proceed In District Court Without Prepaying Fees or Costs indicates that he is unable to prepay the filing fees for this action and will therefore be granted.

**II.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## III.  First Amended Complaint

In his two-count First Amended Complaint, Plaintiff sues Corizon Health ("Corizon"), Corizon Nurse Practitioner Linda Okafor, Corizon LPN C. Hawley, and Facility Health Administrator C. Demery.  Plaintiff asserts claims of inadequate medical care and seeks monetary relief.

Plaintiff alleges the following:

On August 1, 2018, Plaintiff was playing basketball, and he was "undercut while airborne by an opposing player."  Plaintiff fell to the cement floor and "crashed down off-balance onto [his] right arm's elbow and forearm area," which "had the impact of all of Plaintiff's body weight."  Shortly after receiving the "painful and traumatic injury," Plaintiff went to Cook Unit's medical facility for an examination and emergency treatment. The onsite medical assistant did not x-ray Plaintiff's arm or have him transported to the hospital for urgent or emergency treatment, x-rays, or an extensive examination.  Plaintiff received only ice and Tylenol for pain and was advised to submit a Health Needs Request (HNR) to be seen by a nurse and examined by the medical nurse practitioner, because no licensed physician is employed or assigned to Cook Unit's medical facility by the Arizona Department of Corrections (ADC) or Corizon.

On August 2, 2018, Plaintiff submitted an HNR, requesting emergency treatment. The next day, Plaintiff was examined by a nurse on the nurse's line of scheduled patients. Plaintiff was not transported to the medical provider or hospital for x-rays or treatment for

his injured arm. From August 1 to 3, 2018, Plaintiff was only provided a 7-day lower bunk special needs assignment, medical ice for swelling, and an ace bandage. He was scheduled to see Defendant Okafor on the doctor's line of scheduled patients on August 8, 2018. On August 8, Plaintiff went to Cook Unit's medical facility to see Okafor and have x-rays taken of his arm and receive emergency medical treatment, as previously scheduled. Correctional Officer (CO) II Kroenic advised Plaintiff that Okafor had "postponed/cancelled" the scheduled visit but provided no reason for the "postponement/cancellation." CO II Kroenic told Plaintiff that Okafor had rescheduled the appointment for August 14, 2018.

On August 14, Plaintiff went to the Cook Unit medical facility. Again, CO II Kroenic informed Plaintiff that the visit had been "postponed/cancelled" by Defendant Okafor, and without reason, no emergency attention or treatment would be provided. Okafor rescheduled Plaintiff's visit for August 20, 2018. Plaintiff "pleaded" to be seen by Okafor for his arm, which was swollen and visibly injured, to be taken to a hospital, or to speak to Okafor. Okafor "refused without explanation or reason provided as to why Plaintiff would not be seen that date." Plaintiff remained "in immense pain" while he waited "many hours and days" to see Okafor for x-rays and emergency medical treatment.

Plaintiff was forced to return to his housing unit without an x-ray, medical treatment, or adequate pain medication. The 7-day special needs order for a bottom bunk expired, and Plaintiff had to climb up onto a five-foot top-level bunk bed with "extreme risks and difficulties" because it required him to use his broken arm to get into the bed. Plaintiff continued to experience incredible pain because he is righthanded. He received "absolutely no medical care whatsoever of an adequate nature despite his obvious and desperate need(s)." Each time Plaintiff tried to sleep, he was abruptly awakened by intense shooting pain when he rolled over or his forearm touched anything. Without adequate pain medication or an appropriate dressing for his forearm and elbow, Plaintiff was forced to endure incredible pain each day, and especially at night. At that point, he had remained in

immense pain for more than 20 days while he waited for Defendant Okafor to examine him or schedule an examination, x-rays, or Cook Unit medical visit.

After a "sleepless night," Plaintiff sought out medical attention the following morning. Plaintiff went to the captain's area, where he told Captain Romney about Okafor's "deliberate and callous indifference" to Plaintiff's urgent medical condition, and the "utter lack" of medical care that caused him to suffer immeasurable pain as his forearm swelled and bruised. On August 21, 2018, shortly after Plaintiff spoke with Captain Romney about Okafor's postponement/cancellation of the August 20 scheduled visit and "all the previous incidents of refusing emergency or urgent medical treatment through postponement of schedule[d] visits," Plaintiff pleaded with Romney to be taken directly to a hospital for evaluation and treatment. Instead, Romney made Plaintiff wait in the captain's receiving area, went to the office, and called Cook Unit's medical facility about Plaintiff's arm. When Romney returned, he inspected Plaintiff's swollen and bruised forearm and saw that Plaintiff was in immense pain, but rather than call an ambulance, he escorted Plaintiff to Cook Unit's medical facility so that Plaintiff could be seen by medical staff.

Plaintiff's vitals and weight were taken by a nurse, and he was then seen by Defendant Okafor. Plaintiff was given pain medication and told he would have to be scheduled to have x-rays performed at the Meadows Unit medical facility because there was no licensed physician or x-ray equipment on the premises. Plaintiff's 7-day lower bunk special needs order was not renewed, and no splint or soft cast was placed on his arm, nor was his arm immobilized for safety or to prevent further harm and damage to the bones, ligaments, or tendons in the forearm and elbow.

On August 23, 2018, Plaintiff was transported to Meadows Unit's medical facility, and x-rays were taken. The x-rays showed a "severe fracture" of Plaintiff's right arm. On August 27, 2018, Plaintiff saw Defendant Okafor. Okafor advised Plaintiff that she would request that he be sent out for treatment and that the request had already been submitted, but it would be at least 30 days before he could receive treatment. Okafor did not submit

a request to have Plaintiff sent out or immediately transported for appropriate treatment of his fractured arm, nor did she set the arm in a soft cast or splint and arm sling, which would have kept the fractured bone immobile and would have aided in the healing process.

On August 29, 2018, Plaintiff submitted an Informal Complaint Resolution addressed to CO III Anderson that advised Anderson of "all events which had previously transpired." Plaintiff wrote in the Informal Complaint Resolution that "the provider" told him that his right arm was broken, and she had scheduled an appointment with a doctor, but it would be at least 30 days before Plaintiff could be treated. Plaintiff wrote that he was enduring pain and suffering and needed immediate medical attention because there was a possibility that his injury could heal or mend itself "in an improper manner," resulting in a handicap or loss of range of motion and extended use limitations. Plaintiff requested that his "arm be designated an emergency treatment case" and that he immediately be transported to the nearest "hospital and/or specialist" for an examination, thorough evaluation, and appropriate medical treatment.

On September 10, 2018, Defendant Hawley responded to Plaintiff's Informal Complaint Resolution. Hawley's response noted Plaintiff was not seen by the provider until August 27, 2018, but a request for Plaintiff to be sent out for treatment had been submitted. Hawley noted that Plaintiff was requesting immediate treatment, rather than waiting 30 days for treatment. Hawley wrote that Plaintiff met with the medical provider on August 27 to discuss x-rays results, which showed a fracture of the right radial head, and the necessary treatment. Hawley stated that the medical provider submitted a request for an orthopedic consultation for surgical treatment, and after Utilization Review approval, Plaintiff would be scheduled for an off-site consultation. Hawley instructed Plaintiff to submit an HNR for medical needs directly to his unit nursing staff for scheduling.

Plaintiff filed an Inmate Grievance on September 17, 2018, stating his injury could have been prevented if he had received timely medical care. The grievance was not processed by the grievance coordinator until October 2, 2018. On October 18, 2018,

1  Defendant Demery responded to Plaintiff's Inmate Grievance. Demery wrote in the
2  response that Utilization Review had considered Plaintiff's medical records and x-ray
3  reports, which showed a radial head fracture, and recommended an alternative treatment
4  plan, because "medical necessity for an ortho[pedic] consult[ation] was not demonstrated."
5  Demery noted that non-displaced (Mason Type I) fractures involving the radial head and
6  neck can generally be treated by a primary care physician once it has been determined, as
7  in Plaintiff's case, that no mechanical block to elbow flexion exists. Demery stated that a
8  sling may be used for comfort for 24 to 48 hours after the initial injury, and ice should be
9  applied during the first 24 hours. Demery noted that range of motion exercises should be
10 started as early as possible, and follow-up x-rays had been ordered. Demery advised
11 Plaintiff to continue taking ibuprofen for pain once his prescription for Tylenol 3 expired.
12 Demery noted that Plaintiff had been educated to continue with range of motion exercises
13 and to make his needs known via HNR. Demery stated that Plaintiff would be notified of
14 the x-ray results, and if he had any further concerns or issues that had not been addressed,
15 to submit an HNR directly to his unit nursing staff for scheduling.
16 On November 5, 2018, x-rays revealed Plaintiff had complete bone breaks and a
17 fracture in his right forearm. Despite the x-ray technician's "expedient intra-
18 communication (stat) of the severity" of the injury, Plaintiff was informed that based on
19 the evaluation, the results were "within acceptable limits" and that no further action was
20 needed. On November 7, 2018, a reviewing practitioner added additional comments that
21 she would reorder forearm x-rays "upon notification date."
22 On or about November 7, 2018, Plaintiff was taken to Browning Unit's medical
23 facility to have x-rays taken. The x-ray technician explained to Plaintiff that because the
24 bones were not timely set or properly reset, the fractured bones in his forearm had broken
25 cleanly apart, and the bone marrow had "effectively died," the bones would need to be
26 surgically fused back together and would require pins or screws. The x-ray technician also
27 explained to Plaintiff that his broken arm should have at least been placed in a soft cast and
28 arm sling, or a splint and arm sling, which would have kept the fractured bone together by

immobilizing it. Although Defendant Corizon and its medical providers took x-rays and knew that the bones in Plaintiff's forearm "are or were broken," observed "obvious edema," and knew Plaintiff's injuries required immediate care, as of November 14, 2018, Plaintiff had not been seen or received medical treatment or surgery by an orthopedic specialist or other licensed medical surgeon or specialist. Defendant Okafor no longer provides Plaintiff with any type of pain medication.

Plaintiff alleges that if his arm had been immobilized, it would have aided in the healing process because some calcium would have begun to form in and around the fractured bone. Plaintiff asserts that no alternative treatment would help the healing process, and surgery was required because it was a "very severe fracture" that caused excruciating pain. Plaintiff contends it is not standard protocol or ethical for medical professionals "to stand by" and allow this type of injury and pain and suffering. Plaintiff claims that this "life-changing unfavorable outcome," but for lack of diligent standard medical treatment and the "overly blatant rejection of punctually expedient practiced care," could have been prevented.

Plaintiff alleges that, although Defendant Okafor knew or should have known that Plaintiff had broken bones in his forearm and was experiencing incredible pain and suffering, Okafor made no reasonable or adequate effort to accelerate medical treatment and/or surgery. Plaintiff asserts Okafor's failure to adequately or reasonably respond to Plaintiff's medical needs "has or may have" resulted in permanent or potentially permanent disfigurement, loss of range of motion, and the necessity for pins or screws to fuse the bone back together. Plaintiff contends this type of fracture requires surgery, and it takes six months to one year for it to heal. Plaintiff claims that, because of Okafor's "deliberate and callous indifference" to Plaintiff's medical condition, the lack of medical care caused Plaintiff to suffer immeasurable pain.

Plaintiff alleges that Defendants Corizon, Okafor, Hawley, and Demery "were and are well aware of severe system-wide deficiencies that have caused significant danger, harm and even death" to inmates in ADC custody, yet they failed to take any measure to

abate the impermissible and unconstitutional risk of harm their decisions create for Arizona inmates. Plaintiff asserts that, in recent years, Defendants have ignored repeated warnings of the inadequacies of the health care system and of the dangerous conditions in their work environments. Plaintiff contends that Defendants have received numerous warnings, lawsuits, complaints, letters, and "hundreds upon hundreds of pages of information" disclosing potential issues with inadequate medical treatment, serious medical deficiencies, failure to mitigate or treat potential infections, failure to adequately supervise personnel, and numerous other concerns. Plaintiff claims that, despite this, Defendants have continued to ignore or neglect these very serious issues. Plaintiff alleges that Defendants have continued to make no significant changes or improvements to their prison healthcare policies or procedures and continue to provide unreasonable, inadequate, negligent, and unconstitutionally poor health care to inmates in ADC custody, in reckless and deliberate indifference to the risk that this conduct posed to inmates' constitutional, statutory, and common law rights. Plaintiff asserts that, because of Defendants' acts, he has been severely damaged, including, "without limitation," permanent physical impairment, loss of earning potential, and incredible pain and suffering.

**In Count One**, Plaintiff alleges that Defendants Okafor, Hawley, and Demery knew or should have known that Plaintiff was in dire need of serious medical attention and that he was not receiving adequate medical attention. Plaintiff asserts that, despite his complaints and repeated requests for medical care, Okafor, Hawley, and Demery deliberately withheld medical care from Plaintiff, even as he was experiencing significant medical events and enduring substantial pain. Plaintiff contends that Okafor, Hawley, and Demery's conduct was objectively unreasonable and was undertaken with willful, reckless, and malicious indifference to Plaintiff's constitutional rights and liberty interests. Plaintiff claims that by failing to respond to his medical needs, Okafor, Hawley, and Demery paid "no regard to the likelihood of causing extreme unnecessary pain and permanent damage" to Plaintiff. Plaintiff alleges that, as a result, he suffered extreme unnecessary pain for no legitimate penological purpose. Plaintiff asserts that Okafor, Hawley, and Demery's

wrongful conduct violated Plaintiff's Eighth Amendment rights. Plaintiff claims that as a direct and proximate result of Okafor, Hawley, and Demery's deliberate indifference, Plaintiff has suffered extraordinary pain, permanent injury, and Plaintiff and his marital community have suffered a significant loss of his potential income and/or earning capacity upon his release from ADC.

**In Count Two**, Plaintiff alleges that Defendant Corizon promulgated and endorsed written and unwritten policies, customs, and procedures that resulted in a violation of his Eighth Amendment rights. Plaintiff asserts that Corizon has a policy and practice of providing inmates with inadequate medical care to minimize its expenses and maximize its profits and is deliberately indifferent to the fact that their systematic failure to provide adequate medical care to inmates results in significant injury and a substantial risk of harm to inmates. Plaintiff contends that Corizon's policy and practice of failing to provide adequate medical care directly in Arizona's prisons results in inmates experiencing prolonged unnecessary pain and suffering, preventable injury, illness, and death. Plaintiff claims that Corizon's policy directly and proximately caused Plaintiff's pain, suffering, permanent injuries, and reduced earning potential. Plaintiff alleges that Corizon has a policy and practice of understaffing their prison healthcare facilities, which causes inappropriate, unreasonable, unsafe, and unconstitutional delays in diagnosing and treating inmates in Eyman Cook Unit and elsewhere. Plaintiff asserts that these delays significantly increase the risk of pain, suffering, death, disfigurement, and permanent injuries. Plaintiff claims that, through its policies and practices, Corizon subjects inmates like Plaintiff to pain, suffering, infection, deterioration, and substantial risk of serious harm or permanent injury from inadequate medical care. Plaintiff contends that these policies and practices have been and continue to be implemented by Corizon and are the proximate cause of the deprivation of Plaintiff's constitutional rights.

**IV.    Failure to State a Claim**

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and

**TERMPSREF**

- 10 -

(4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical

malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Plaintiff's allegations against Defendants Hawley and Demery are insufficient to state a claim. Plaintiff does not allege facts to support that Hawley or Demery was in any way responsible for or directly involved in Plaintiff's medical care, or that either Hawley or Demery prevented him from receiving proper care. Rather, Plaintiff's facts indicate that Hawley and Demery responded to Plaintiff's grievances in an administrative, not medical, capacity, and that they did so based on their review of Plaintiff's treatment records and the opinions of Plaintiff's medical providers, not their own medical assessments. Hawley and Demery's responses to Plaintiff's grievances, by themselves, do not show that they were aware of a serious risk to Plaintiff's health, which they disregarded. *See Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (finding no deliberate indifference where supervisor signed off on Plaintiff's grievance appeal without independently reviewing Plaintiff's claims because the supervisor had no independent experience in that area of medicine and relied on the medical opinions of staff with the relevant expertise). Plaintiff has failed to allege facts to support that Hawley and Demery were deliberately indifferent to Plaintiff's serious medical needs. Accordingly, the Court will dismiss Defendants Hawley and Demery.

## V.     Claims for Which an Answer Will be Required

Liberally construed, Plaintiff has stated an Eighth Amendment deliberate indifference claim against Defendant Okafor in her individual capacity in Count One of the First Amended Complaint and against Defendant Corizon in Count Two of the First

Amended Complaint. The Court will order Okafor to answer Count One and Corizon to answer Count Two.

## VI. Warnings

### A. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### C. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed In District Court Without Prepaying Fees or Costs (Doc. 15) is **granted**.

(2) Defendants Hawley and Demery are **dismissed** without prejudice.

(3) Defendant Okafor must answer Count One of the First Amended Complaint. Defendant Corizon must answer Count Two.

(4) The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 11), this Order, and both summons and request for waiver forms for Defendants Corizon and Okafor.

**TERMPSREF**

(5) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

    (a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) or Rule 4(h)(1) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant

pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9)     **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(10)    Defendants Corizon and Okafor must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11)    Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(12)    This matter is referred to Magistrate Judge John Z. Boyle pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 8th day of January, 2019.

_____
Susan R. Bolton
United States District Judge

TERMPSREF